# EXHIBIT A

**IN THE CIRCUIT COURT OF THE 15TH JUDICIAL CIRCUIT**
**IN AND FOR PALM BEACH COUNTY, FLORIDA**

DCR Workforce, Inc., a Florida corporation

        Plaintiff,

                                     Case No.

   vs.

Coupa Software Incorporated, a Delaware
corporation

        Defendant.

_____/

**COMPLAINT**

NOW COMES, Plaintiff DCR Workforce, Inc. (hereinafter "Plaintiff") by and through its undersigned counsel, files this Complaint for damages and declaratory relief and sues Defendant Coupa Software Incorporated (hereinafter "Defendant") and in support thereof states as follows:

**GENERAL ALLEGATIONS**

1.     Plaintiff is a Florida corporation with its principal place of business in Palm Beach County, Florida.

2.     Upon information and belief Defendant is a Delaware corporation with its principal place of business in the County of San Mateo, California and is authorized to do business in Florida and has an office located in Palm Beach County, Florida.

3.     This Court has subject matter jurisdiction over this case because it is an action for damages in excess of $30,000.00, exclusive of interest, attorneys' fees, and costs.

4.     This Court has personal jurisdiction over the Defendant pursuant to §48.193(1)(a)(1), Florida Statutes, because Defendant operated, conducted, engaged in, or carried on a business or business venture in Florida and has an office in Florida.

5.      Venue is proper in Palm Beach County, Florida pursuant to §47.051, Florida Statutes because Defendant is a corporation that has an agent or other representative in Palm Beach County, Florida where this cause of action accrued.

6.      All conditions precedent to bringing this action have occurred, been performed or been excused.

<u>**COUNT I: BREACH OF CONTRACT**</u>

**A.  Failure to Issue Second Earnout Tranche**

7.      Plaintiff re-alleges and re-avers paragraphs 1 through 6 above as though fully stated herein.

8.      Plaintiff is a minority and woman-owned business that was founded in 1995 and prior to the events that gave rise to these causes of action, was in the business of providing contingent workforce management and services procurement software.

9.      In or around 2012, Plaintiff began offering to customers a Vendor Management System ("VMS"), which is an internet-enabled, web-based application that acts as a mechanism for businesses to manage and procure staffing services as well as outside contract or contingent labor. Since its initial VMS product offering, Plaintiff has been recognized in the industry and has garnered substantial goodwill and accolades as an innovator and disruptor in the field of VMS as well as a Minority Business Enterprise certified by the Florida State Minority Supplier Development Council.

10.     In or around the first quarter of 2018, Defendant reached out to Plaintiff in order to indicate its interest in purchasing the technology components of Plaintiff's VMS product offering ("VMS Products"). Upon information and belief, Defendant's interest in acquiring

2

# PAGES 3 THROUGH 18

# CONFIDENTIAL

Assumed Contracts to Defendant and Defendant's use of commercially reasonable sales efforts consistent Defendant's similar products. In fact, the First Milestone ARR was achieved immediately upon the transfer of the Assumed Contracts and in the earliest possible Measurement Period after the Closing.

89.     Accordingly, based on the express provisions of the Asset Purchase Agreement in connection with the transfer of the Purchased Assets to Defendant, Plaintiff trusted Defendant to use commercially reasonable efforts to pursue commercial opportunities which would benefit both parties and to not arbitrarily change pricing models or the Transferred Business so as to intentionally push revenue earnings beyond the relevant Eligibility Periods.

90.     On information and belief, Defendant has breached its implied covenant of good faith and fair dealing during the Second Eligibility Period by (1) failing to conduct sales efforts for the VMS Products in a manner at least equal to the sales efforts Defendant generally employed for its similar products; (2) requiring customers to change the pricing model under the Assumed Contract from a usage-based fee model to a subscription model with the intention of the lowering revenue from and/or attributable to the Purchased Assets for the Second Eligibility Period; (3) refusing to contract with customers who declined to accept the non-industry standard subscription payment model with the intention of the lowering revenue from and/or attributable to the Purchased Assets for the Second Eligibility Period; (4) offering substantial discounts to customers to change the pricing model under the Assumed Contract from a usage-based fee model to a subscription model with the intention of the lowering revenue from and/or attributable to the Purchased Assets for the Second Eligibility Period; (5) refusing to offer VMS Products as a stand-a-lone product and enter into sales agreements for the like and (6) refusing to finalize

negotiated terms for sales agreement which were assumed by Defendant pursuant to the Asset Purchase Agreement.

91.     Further, Defendant demonstrated a lack of good faith and fair dealing by (i) failing to provide Plaintiff with adequate information in the relation to requests regarding the Second Milestone; and (ii) failing to pay Plaintiff its entitled to Holdback Cash as set forth in the Asset Purchase Agreement.

92.     Further, Defendant terminated the employment of Ammu Warrier and Naveen Dua less than a year after the Closing Date of the Asset Purchase Agreement, and prior to the start of the Second Eligibility Period, with the intention of limiting the oversight contracted for by the parties in connection with achieving the operation of the Transferred Business and achievement of the applicable ARR milestones.

93.     On information and belief, but for Defendant's arbitrary operation of the of the Purchased Assets inconsistent with terms and intent of the Asset Purchase Agreement, revenue for the VMS Products would have achieved an ARR greater than or equal to $10,000,000 for at least one Measurement Period during the Second Eligibility Period, and Defendant would have been required to issue Plaintiff 206,065 shares of Defendant's Common Stock representing the Second Earnout Tranche.

94.     Plaintiff has been, and continues to be, harmed by Defendant's breach of the implied covenants and are entitled to an award of damages as a result of Defendant's breaches, in an amount to be proven at trial.

**WHEREFORE** the Plaintiff demands judgment against Defendant in an amount in excess of $30,000.00, together with interest, costs and attorney's fees, and for any and such further relief as this Court deems just, proper, and equitable.

## COUNT III: UNJUST ENRICHMENT [IN THE ALTERNATIVE]

95.     Plaintiff re-alleges and re-avers paragraphs 1 through 6 above as though fully stated herein.

96.     This count is an equitable claim pled in the alternative to Count I.

97.     On or about July 13, 2018, Defendant agreed to acquire Plaintiff's certain technology assets and related intellectual property rights and contracts in exchange for cash consideration of $25,000,000 and certain contingent stock consideration that may be earned and issued in the future.

98.     Upon information and belief that the sale of Plaintiff's certain technology assets and related intellectual property rights and contracts to Defendant enabled Defendant to offer a more comprehensive business spend management platform that allowed Defendant to more effectively compete in the business spend management marketplace.

99.     Upon information and belief that Defendant's fourth quarter revenue for the fiscal year ending January 31, 2019, which represents the first full fiscal quarter after the Defendant's purchase of Plaintiff's certain technology assets and related intellectual property rights and contracts, increased by forty-one percent (41%) compared to the fourth quarter of the fiscal year that ended in January 31, 2018.

100.     Upon information and belief that Defendant's first quarter revenue for the fiscal year ending on January 31, 2020 increased by thirty-nine percent (39%) compared to the same period for the previous fiscal year. Further, on information and belief such first quarter revenue for the fiscal year ending on January 31, 2020 was twenty million dollars higher than Defendant's reported expectations.

101.   Upon information and belief that Defendant's reported annual revenue for the fiscal year that ended January 31, 2021 was $541.6 million, which was more than double Defendant's reported annual revenue for the fiscal in which Defendant acquired Plaintiff's assets.

102.   Plaintiff conferred a benefit onto Defendant by selling to Defendant its certain technology assets and related intellectual property rights and contracts.

103.   Defendant was actually benefitted by the Plaintiff's sale of certain technology assets and related intellectual property rights and contracts.

104.   Defendant voluntarily accepted and retained the benefit conferred from Plaintiff.

105.   By reason of the foregoing, and due to the failure of Defendant to fully reimburse Plaintiff for the acquired certain technology assets and related intellectual property rights and contracts, Defendant has been unjustly enriched, at the expense of Plaintiff.

106.   Plaintiff has been deprived of the consideration in which the transfer of assets were made and the circumstances are such that it would be inequitable for Defendant to retain the benefit given by Plaintiff without giving the value promised to Plaintiff therefor.

107.   The total amount of damages Plaintiff suffered up until now, in which Defendant was unjustly enriched, is in excess of approximately $72,326,752.00.

**WHEREFORE**, for the above stated reasons, Plaintiff respectfully requests that this Court enter judgment in its favor on Count III, for all damages together with interest, costs and any other relief that the Court deems necessary, just and proper.

## <u>COUNT IV: DECLARATORY RELIEF</u>

108.   Plaintiff re-alleges and re-avers paragraphs 1 through 6 above as though fully stated herein.

109.    This is an action for declaratory relief brought pursuant to Fla. Stat. § 86.011. Plaintiff is entitled to have any doubt regarding the existence or nonexistence of any right or duty under the Asset Purchase Agreement in question removed.

110.    Plaintiff and Defendant are parties to a binding contract, the Asset Purchase Agreement, which contains various obligations including but not limited to Defendant's obligation to issue Contingent Stock Consideration to Plaintiff in a timely manner.

111.    There is an actual controversy with respect to the Contingent Stock Consideration due pursuant to the Asset Purchase Agreement.

112.    Plaintiff is entitled to a judicial declaration that Plaintiff is entitled to the Second Earnout Tranche as set forth in the Terms and Conditions of Contingent Stock Consideration.

113.    Plaintiff is entitled to a judicial declaration that Defendant has failed to properly provide Plaintiff with the documentation necessary for Plaintiff to reasonably detail its disagreements with Defendant's ARR calculations for the Second Eligibility Period.

114.    Plaintiff is entitled to a judicial declaration that due to Defendant's failure to provide Plaintiff with the documentation necessary for Plaintiff to reasonably detail its disagreements with Defendant's ARR calculations for the Second Eligibility Period, any dispute resolution procedure as contemplated by the Asset Purchase Agreement in relation to such ARR Calculation would be pre-mature.

**WHEREFORE**, Plaintiff seeks a Declaratory Judgment from this Court (a) stating that Plaintiff is entitled to the Second Earnout Tranche; (b) stating that Defendant has not provided the necessary documentation in order for Plaintiff to fully dispute Defendant's ARR calculations; (c) stating that the dispute resolution procedures in relation to Defendant's ARR calculation

23

would be pre-mature without Plaintiff receiving the necessary documentation; and (d) for such other and further relief as this Court deems just, proper and equitable.

## COUNT V: EQUITABLE ACCOUNTING

115.    Plaintiff re-alleges and re-avers paragraphs 1 through 6 above as though fully stated herein.

116.    The Asset Purchase Agreement between Plaintiff and Defendant involves extensive and complicated accounts and it is not clear that the remedy at law is as full, adequate and expeditious as it is in equity.

117.    The Asset Purchase Agreement consisted of an issuance of contingent stock consideration based on the achievement of certain distinct revenue performance targets.

118.    Such distinct revenue performance targets were based on Defendant's (i) recurring subscription-based revenue for the VMS Products; (ii) revenue generated by customer usage of VMS Products; (iii) revenue for professional services generated by deployment of VMS Products; (iv) revenue for fees received under the a License Agreement between Plaintiff and Defendant. Further, it was contemplated that if sales of VMS Products were bundled with other product(s) of Defendant, the revenue that relates to the VMS Products would be allocated by Defendant based on the list price of the bundled products (as adjusted for any discount off list price given in connection with any sale).

119.    Consequently, the demands between litigants in this action involve extensive and complicated accounts requiring an equitable accounting of, without limitation the revenue earned by Defendant in relation to the Purchased Assets and all contracts related to Defendant's revenue from the Closing Date to the present including all documents and contracts relating to Defendant's revenues.

24

# PAGE 25
# CONFIDENTIAL

127.    Plaintiff performed all material conditions, covenants, and promises of the Asset Purchase Agreement to be performed on Plaintiff's part, including those required for the Holdback Cash payment, and is excused from any non-performance by Defendant's breaches of contract and breaches of the implied covenant of good faith and fair dealing.

128.    The terms of the Asset Purchase Agreement's obligations are sufficiently definite to enable the Court to specifically enforce them.

129.    Based on the foregoing, Plaintiff seeks a judgment from this Court ordering that Defendant specifically perform its obligations under the Asset Purchase Agreement, including releasing the unpaid Holdback Cash and Second Earnout Tranche, and complying with its obligations for the Third Eligibility Period. This specific performance, including an order requiring Defendant to specifically perform its obligation to release the Holdback Cash and Second Earnout Tranche, is the most complete and efficient form of relief available to Plaintiff.

130.    Plaintiff has no adequate remedy at law.

**WHEREFORE**, for the above stated reasons, Plaintiff respectfully requests that this Court enter judgment in its favor on Count VI, for all damages together with interest, costs and any other relief that the Court deems necessary, just and proper.

## COUNT VII: FRAUD IN THE INDUCEMENT

131.    Plaintiff re-alleges and re-avers paragraphs 1 through 6 above as though fully stated herein.

132.    Upon information and belief, on or about July 5, 2018 and July 6, 2018, prior to entering into the Asset Purchase Agreement and while negotiating the Terms and Conditions of Contingent Stock Consideration, Defendant, through J.J. Freitag, Vice President of Corporate Development for Defendant, made representations through emails and through phone

# PAGES  27 THROUGH 29
# CONFIDENTIAL

Defendant, through J.J. Freitag made representations to Plaintiff by electronic mail on July 5, 2018 that the "[revenue] hurdle of $20m payout is tied only to getting the remaining contracts Live and/or google or other contracts moving through that next revenue hurdle."

148.    Upon information and belief that prior to the entering of the Asset Purchase Agreement and while negotiating the Terms and Conditions of Contingent Stock Consideration, Defendant, through J.J. Freitag made representations to Plaintiff by electronic mail on July 6, 2018 that "[y]ou currently have $12M in revenue under contract. The [Earnout based on a $12M target revenue] is entirely in place to ensure that the customers under contract get live and ramped."

149.    Upon information and belief that prior to the entering of the Asset Purchase Agreement and while negotiating the Terms and Conditions of Contingent Stock Consideration, Defendant, through J.J. Freitag made representations to Plaintiff by electronic mail on July 6, 2018 that Defendant "expect[s] that with the Coupa name, 120 sales reps selling the product, that adding $4M more contracts will not be an issue….This has been a consistent message since we struck this deal in May."

150.    The representations made by Defendant listed in paragraphs 132 through 136 and paragraphs 146 through 149 hereof were material to Plaintiff's decision to close on the sale of assets pursuant to the Asset Purchase Agreement.

151.    In reliance on these representations, Plaintiff agreed the Terms and Conditions of Contingent Stock Consideration set forth in Schedule 2.13 to the Asset Purchase Agreement and to the specific ARR milestones as set forth therein

152.    The representations made by Defendant listed in paragraphs 132 through 136 and paragraphs 146 through 149 were false statements of material fact.

153.    Defendant either knew that the representations made by it in paragraphs 132 through 136 and paragraphs 146 through 149 were false, made the representations without knowledge of their truth or falsity, or should have known they were false.

154.    Defendant expected and intended for Plaintiff to rely on its false representations in entering into and consummating the Asset Purchase Agreement.

155.    Plaintiff was justified in relying on Defendant's false representations and such reliance was reasonable.

156.    Despite Plaintiff performing all of it contractual obligations with respect to the onboarding and assuring that the Assumed Contracts went "live," the ARR for the Second Eligibility Period did not reach $10,000,000. Defendant failed to use commercially reasonable sales efforts or to have 120 sales people sell the VMS Products pursuant to Defendant's representations.

157.    Plaintiff suffered damages as a result of its justifiable reliance on Defendants false representations.

**WHEREFORE**, for the above stated reasons, Plaintiff respectfully requests that this Court enter judgment in its favor on Count VIII, for all damages together with interest, costs and any other relief that the Court deems necessary, just and proper.

## **JURY DEMAND**

Plaintiff demands a trial by jury for Count VIII herein for all issues triable as of right by jury.

Dated May 26, 2021

Respectfully submitted,

KELLEY KRONENBERG, P.A.
*Attorneys for Plaintiff*
10360 West State Road 84
Ft. Lauderdale, FL 33324
Telephone: (954) 370.9970
Facsimile: (954) 382.1988
Emails: harora@kklaw.com
       hkaeservice@kklaw.com
       eadler@kklaw.com

By: /s/ Harsh Arora
   Harsh Arora, Esq.
   Florida Bar No.: 35271

By: /s/ Efraim Adler
   Efraim N. Adler, Esq.
   Florida Bar No.: 1008261

32

**IN THE CIRCUIT COURT OF THE 15TH JUDICIAL CIRCUIT
IN AND FOR PALM BEACH COUNTY, FLORIDA**

DCR Workforce, Inc., a Florida
corporation,

      Plaintiff,

                                                CASE NO:

vs.

Coupa Software Incorporated, a Delaware
corporation,

      Defendant.

_____/

**<u>SUMMONS</u>**

THE STATE OF FLORIDA:
To Each Sheriff of the State:

      **YOU ARE HEREBY COMMANDED** to serve this Summons and a copy of the complaint in the above-styled cause upon the following defendant:

                      **COUPA SOFTWARE INCORPORATED**
                      **UNITED AGENT GROUP INC., REGISTERED AGENT**
                      **801 US HIGHWAY 1**
                      **NORTH PALM BEACH, FL 33408**

      Each defendant is required to serve written defenses to the complaint or petition to Plaintiff's attorney, **Harsh Arora, Esq. of Kelley Kronenberg, P.A.** whose address is **10360 West State Road 84, Fort Lauderdale, Florida 33324**, within **twenty (20) days** after service of this summons on that defendant, exclusive of the day of service, and to file the original of the defenses with the Clerk of this Court either before service on Plaintiff's attorney or immediately thereafter. If a defendant fails to do so, a default will be entered against that defendant for the relief demanded in the complaint or petition.

      DATED _____

                                        Joseph Abruzzo, Clerk of the Court

                                  By: _____
                                           As Deputy Clerk

## **<u>IMPORTANT</u>**

A lawsuit has been filed against you. You have twenty (20) calendar days after this summons is served on you to file a written response to the attached complaint/petition with the Clerk of this Court. A phone call will not protect you. Your written response, including the case number given above and the names of the parties, must be filed if you want the Court to hear your case. If you do not file your response on time, you may lose the case. If you do not file your response on time, you may lose the case, and your wages, money, and property may thereafter be taken without warning from the Court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may call an attorney referral service or a legal aid office (listed in the phone book). If you choose to file a written response yourself, at the same time you file your written response with the Court you must also mail or take a copy of your written response to the "Plaintiff/Plaintiff's Attorney" named below.

**Harsh Arora, Esq.**
**Kelley Kronenberg, P.A.**
**10360 West State Road 84,**
**Fort Lauderdale, Florida 33324**
**Telephone number: (954) 370-9970**
**Facsimile number: (954) 337-6474**

## IMPORTANTE

Usted ha sido demandado legalmente. Tiene 20 dias, contados a partir del recibo de esta notificacion, para contester la demanda adjunta, por escrito, y presentarla ante este tribunal. Una llamada telefonica no lo protegera. Si usted desea que el tribunal considere su defense, debe presenter su respuesta por escrito, incluyendo el numero del caso y los nombres de las partes interesadas. Si usted no contesta la demanda a tiempo, pudiese perder el caso y podria ser despojado de sus ingresos y propiedades, o privado de sus derechos, sin previo aviso del tribunal.

Existen otros requisitos legales, Si lo desea, puede usted consultar a un abogado immediatamente. Si desea responder a la demanda por su cuenta, al mosmo tiempo en que presenta su respuesta ante el tribunal, debera usted enviar por correo o entrgar una copia de su respuesta a la persona demoninada abajo como "Plaintiff/Plaintiff's Attorney" (Demandante o Abogado del Demandante):

**Harsh Arora, Esq.**
**Kelley Kronenberg, P.A.**
**10360 West State Road 84,**
**Fort Lauderdale, Florida 33324**
**Telephone number: (954) 370-9970**
**Facsimile number: (954) 337-6474**

## **IMPORTANT**

Des poursuites judiciaries ont ete enterprises contre vous, Vous aves 20 jours consecutifs a partir de la date de l'assignation de cette citation pour deposer une reponse ecrite a la plainte ci-jointe aupres de ce tribunal. Un simple coup de telephone est insuffisant pour vous proteger. Vous etes oblige de deposer votre reponse ecrite, avec mention du numero de dossier ci-dessus et du nom des parties nunmees ici, si vous souhaitez que le tribunal entende votre cause. Si vous ne deposez pas votre reponse ecrite dans le relai requis, vous risquez de perdre la cause ainsi que votre salaire, votre argent, et voz biens peuvent etre saisis par la suite, sans aucun preavis alterieur du tribunal. Il y a ne connaissez pas d'avocat, vous pourriez telephoner a un service de reference d'avocats ou a un bureau d'assistance juridique (figurant a l'annuaire de telephones). Si vous choisissez de deposer vous-meme une reponse ecrite, il vous faudra egalement, en meme temps que cette formalite, fiare parvenir ou expedir une copie de votre reponse ecrite au Plaintiff/Plaintiff's Attorney (Plaignant ou a son avocat) nomme ci-dessous.

**Harsh Arora, Esq.**
**Kelley Kronenberg, P.A.**
**10360 West State Road 84,**
**Fort Lauderdale, Florida 33324**
**Telephone number: (954) 370-9970**
**Facsimile number: (954) 337-6474**

**Administrative Order No. 2.207-9/12 and Florida Rules of Judicial Administration Rule 2.540 Notices to Persons with Disabilities**

**"If you are a <u>person with a disability</u> who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact Tammy Anton, Americans with Disabilities Act Coordinator, Palm Beach County Courthouse, 205 North Dixie Highway West Palm Beach, Florida 33401; telephone number (561) 355-4380 at least 7 days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than 7 days; if you are hearing or voice impaired, call 711."**

**"Si usted es una <u>persona minusválida</u> que necesita algún acomodamiento para poder participar en este procedimiento, usted tiene derecho, sin tener gastos propios, a que se le provea cierta ayuda.   Tenga la amabilidad de ponerse en contacto con Tammy Anton, 205 N. Dixie Highway, West Palm Beach, Florida 33401; teléfono número (561) 355-4380, por lo menos 7 días antes de la cita fijada para su comparecencia en los tribunales, o inmediatamente después de recibir esta notificación si el tiempo antes de la comparecencia que se ha programado es menos de 7 días; si usted tiene discapacitación del oído o de la voz, llame al 711."**

**"Si ou se yon <u>moun ki enfim</u> ki bezwen akomodasyon pou w ka patisipe nan pwosedi sa, ou kalifye san ou pa gen okenn lajan pou w peye, gen pwovizyon pou jwen kèk èd. Tanpri kontakte Tammy Anton, kòòdonatè pwogram Lwa pou ameriken ki Enfim yo nan Tribinal Konte Palm Beach la ki nan 205 North Dixie Highway, West Palm Beach, Florida 33401; telefòn li se (561) 355-4380 nan 7 jou anvan dat ou gen randevou pou parèt nan tribinal la, oubyen imedyatman apre ou fin resevwa konvokasyon an si lè ou gen pou w parèt nan tribinal la mwens ke 7 jou; si ou gen pwoblèm pou w tande oubyen pale, rele 711."**

IN THE CIRCUIT COURT FOR THE FIFTEENTH JUDICIAL CIRCUIT
IN AND FOR PALM BEACH COUNTY, FLORIDA

IN RE: STANDING ORDER FOR
CASE MANAGEMENT FOR SUBMISSION
OF AGREED CASE MANAGEMENT PLAN FOR
CASES FILED ON OR AFTER APRIL 30, 2021

_____/

**STANDING ORDER FOR CASE MANAGEMENT AND SUBMISSION OF AGREED
CASE MANAGEMENT PLAN IN CIVIL CASES
IN THE FIFTEENTH JUDICIAL CIRCUIT FILED ON OR AFTER APRIL 30, 2021
(DCMSO)**

Pursuant to Florida Rule of Civil Procedure 1.200(a), Florida Rule of General Practice and Judicial Administration 2.545, and Administrative Order 3.107 entered by the Chief Judge of this Circuit, the parties are informed of the following information and procedures applicable to civil lawsuits filed in the Circuit Court on or after April 30, 2021:

1. **SERVICE OF THIS ORDER.** The Plaintiff is directed to serve a copy of this Order with each Summons issued in this case. One copy of this Order is to be filed with the Clerk of the Circuit Court with proof of service.

2. **CIVIL CASE MANAGEMENT SYSTEM.** The Supreme Court of Florida has established guidelines for the prompt processing and resolution of civil cases. This Court has adopted a case management system to help meet those guidelines. In contested cases, the parties are required to participate in the case management system. The case management system requires early consultation and cooperation among the parties for the preparation and submission of an Agreed Case Management Plan and early involvement by the Court. The Agreed Case Management Plan requires the parties to identify a case track, confer in good faith and attempt to narrow the matters in controversy, identify the issues that require direct involvement by the Court, and establish a schedule for addressing those issues.[1] The Agreed Case Management Plan may be accessed at the Court's website at: https://15thcircuit.com/civil-differentiated-forms-and-orders.

Unless all of the Defendants have been served and have been defaulted or dropped, an Agreed Case Management Plan must be submitted to the assigned divisional queue via the Court's online scheduling system (OLS) as an attachment, in PDF format, to a proposed Order Accepting Agreed Case Management Plan on or before 130 days from the date of filing of the initial complaint. If the parties are unable to agree on an Agreed Case Management Plan by the applicable deadline, a

_____

[1] Case Track options include Expedited, Streamlined, General, or Complex. Case Tracks have been established in order to comply with the case disposition standards set forth in Florida Rule of General Practice and Judicial Administration 2.250(a)(1)(B).

case management conference will be scheduled by the Court or the Court will review and issue an Order Implementing Case Management Plan without agreement of the Parties. No matters that arise as a result of this standing order, including lack of agreement, will be set on the Court's Uniform Motion Calendar and will, instead, be settled by the Court either at the case management conference or via an Order Implementing Case Management Plan without agreement of the parties. If a case management conference is scheduled, attendance by trial counsel and those parties who are not represented by counsel is mandatory.

If all Defendants are served and defaulted or dropped, the Plaintiff will file the appropriate documentation to pursue a Default Final Judgment within 130 days of the filing of the complaint and Final Judgment is to be entered or set for hearing within 150 days of the filing of the complaint.

      3. **MEDIATION/ALTERNATIVE DISPUTE RESOLUTION (ADR).** ADR provides parties with an out-of-court alternative to settling disagreements. Mediation is a type of ADR wherein an independent third party attempts to arrange a settlement at a conference between the parties. The Court requires the parties to participate in Mediation prior to trial unless the parties agree to another form of ADR.

      **DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, on this 26 day of April, 2021.

 

 

_____
**Administrative Circuit Judge**

**IN THE CIRCUIT COURT OF THE 15TH JUDICIAL CIRCUIT
IN AND FOR PALM BEACH COUNTY, FLORIDA**

DCR Workforce, Inc., a Florida
corporation,

      Plaintiff,

vs.                                                                        CASE NO:

Coupa Software Incorporated, a Delaware
corporation,

      Defendant.

_____/

**<u>NOTICE OF CONFIDENTIAL INFORMATION WITHIN COURT FILING FOR
PLAINTIFF'S COMPLAINT</u>**

      Pursuant to the Florida Rule of Judicial Administration 2.420, the Plaintiff, DCR Workforce, Inc. ("Plaintiff"), requests that the below identified information of a court record filed by the undersigned on behalf of Kelley Kronenberg, P.A., be redacted within court filing.

      <u>Title of Document</u>:      Complaint

      <u>Date of Filing</u>:      May 26, 2021

      <u>The confidential information to be redacted is precisely located at</u>: Pages 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 25, 27, 28, and 29.

      KELLEY KRONENBERG, P.A.
      *Attorneys for Plaintiff*
      10360 West State Road 84
      Ft. Lauderdale, FL 33324
      Telephone: (954) 370.9970
      Facsimile: (954) 382.1988
      Emails: harora@kklaw.com
              hkaeservice@kklaw.com
              eadler@kklaw.com
      By: <u>/s/ Harsh Arora</u>
          Harsh Arora, Esq.
          Florida Bar No.: 35271
      By: <u>/s/ Efraim Adler</u>
          Efraim N. Adler, Esq.
          Florida Bar No.: 1008261

**IN THE CIRCUIT COURT OF THE 15TH JUDICIAL CIRCUIT
IN AND FOR PALM BEACH COUNTY, FLORIDA**

DCR Workforce, Inc., a Florida
corporation,

      Plaintiff,

                                     CASE NO:

vs.

Coupa Software Incorporated, a Delaware
corporation,

      Defendant.

_____/

**PLAINTIFF'S FIRST REQUEST FOR PRODUCTION TO DEFENDANT**

     NOW COMES, Plaintiff, DCR WORKFORCE, INC., a Florida corporation (hereinafter "Plaintiff"), by and through the undersigned counsel, and pursuant to Fla. R. Civ P. 1.350, hereby requests that Defendant, COUPA SOFTWARE INCORPORATED (hereinafter "Defendant") produce the following documents within forty-five (45) days from the date of service of this Request for Production:

**INSTRUCTIONS**

A.  The party to whom this Request for Production is directed is to produce all requested documents that are in that party's possession, custody, or control, including but not limited to, documents in the possession, custody, or control of that party, its attorneys, investigators, members, managers, directors, officers, employees, agents, or other representatives.

B.  The party to whom this Request for Production is directed shall produce all the electronically stored information in a form or forms in which it is ordinarily maintained with metadata for all such electronically stored information.

C.  These Requests are considered to be continuing in duration so as to require supplemental responses pursuant to the Florida Rules of Civil Procedure.

D. Unless otherwise indicated, the relevant time period for these Requests is January 1, 2018 through the present day.

E. In the event if any Request is not clear, Defendant must request in writing, clarification from Plaintiff and provide any and all documents to such Request pursuant to the broadest definition thereof.

## **DEFINITIONS**

A. The term "ARR" has the same meaning as set forth in the Asset Purchase Agreement.

B. The term "Asset Purchase Agreement" means the Asset Purchase Agreement dated July 13, 2018, memorializing the acquisition of certain Plaintiff's assets by Defendant.

C. The term "ASC 606" means a revenue recognition standard developed by the Financial Accounting Standard's Board and International Accounting Standards Board that provides a framework for businesses to recognize revenue more consistently.

D. The term "Communication" means any exchange of information, whether orally or in writing, and includes, but is not limited to, telephonic communication, audiovisual communication, radio transmission, television transmission, data transmission, email, and any and all forms of written information and documents.

E. The term "Complaint" means the Complaint originally filed by Plaintiff in this lawsuit.

F. The term "Contingent Stock Consideration" has the same meaning as set forth in the Asset Purchase Agreement.

G. The term "Coupa Contingent Workforce" means an internet-enabled, web-based application, offered by Defendant, that acts as a mechanism for businesses to manage and procure staffing services as well as outside contract or contingent labor.

H. "Defendant" means Coupa Software Incorporated, a Delaware corporation, and all its subsidiaries, affiliates, parent entities, and all related entities and their employees, agents, or

attorneys, and any other persons acting for, on behalf of, or under the authority or control of Defendant.

I.   The term, "Document" or "Documents" shall include all writings, recordings, and photographs, including the original, all drafts, and all copies (whether or not different from the original because of notes made on or attached to each copy or otherwise), including written, printed, typed, electronically stored, optically stored, and visually or aurally reproduced material of any kind, whether or not privileged, such as (by way of examples and not by way of limitation) letters, correspondence, notes, memoranda, summaries, minutes, interoffice and intraoffice communications, electronic mail or other electronic transmissions, voice mail recordings, voice mail messages, text messages, social media postings, invoices, purchase orders, records, minutes, bills, contracts, agreements, reviews, working papers, tax returns, statistical records, ledgers, books of account, vouchers, bank checks, bank statements, invoices, computer data, stenographer's notebooks, directives, desk calendars, appointment books, diaries, maps, charts, plaques, orders, receipts, drawings/sketches or other graphic representations, photographs, tapes or discs capable of being electronically, mechanically, or optically read, advertising or promotional literature, operating manuals or instruction bulletins, cables or telegrams, microfilm, videotapes, tape or other recordings, test data, reports, studies, analyses, results of investigations, results of tests, and all other materials within the scope of F. S. § 90.401.

J.   "Duplicate" includes a counterpart produced by the same impression as the original, from the same matrix; by means of photography, including enlargements and miniatures; by mechanical or electronic rerecording; by chemical reproduction; or by other equivalent technique that accurately reproduces the original; or an executed carbon copy not intended by the parties to be an original.

K.   An "original" of a writing or recording means the writing or recording itself, or any counterpart intended to have the same effect by a person executing or issuing it. An "original" of a

photograph includes the negative or any print made from it. If data are stored in a computer or similar device, any printout or other output readable by sight and shown to reflect the data accurately is an "original."

L.  The term "Person" refers to individuals, partnerships, associations, corporations, business, trusts, limited liability companies, public entities, governmental bodies, and any and all subparts (e.g., subsidiaries, agencies, or departments) of any such entity.

M.  "Photographs" include still photographs, X-ray films, videotapes, and motion pictures.

N.  "Plaintiff" means DCR Workforce, Inc., a Florida corporation.

O.  The term "Purchased Assets" means the VMS Products and related intellectual property rights and contracts that Defendant acquired from Plaintiff through the Asset Purchase Agreement.

P.  The term "relating to" means, pertaining to, referring to, mentioning, evidencing, supporting, regarding, or addressing.

Q.  The term "VMS" means Vendor Management System, which is an internet-enabled, web-based application, developed by Plaintiff, that acts as a mechanism for businesses to manage and procure staffing services as well as outside contract or contingent labor.

R.  The term "VMS Products" refers to the technology components of Plaintiff's VMS product offering.

S.  "Writings" and "recordings" include letters, words, or numbers, or their equivalent, set down by handwriting, typewriting, printing, photostating, photography, magnetic impulse, mechanical or electronic recording, or other form of data compilation, upon paper, wood, stone, recording tape, email, or other materials.

T.  "You" and "your" mean the party to whom this request for production is directed and includes any predecessors, agents, affiliates, divisions, departments, subsidiaries, present or former employees, agents, managers, members, officers, directors, owners, and all other persons acting or purporting to act on behalf of that party.

U.  "You or anyone acting on Your behalf" includes You, your agents, their employees, your attorneys, your accountants, your investigators, and anyone else acting on your behalf.

V.  Capitalized terms not otherwise defined herein have the meaning set forth in the Asset Purchase Agreement, including the schedules thereto.

W.  Any word or term that is not otherwise defined in the Asset Purchase is to be understood according to its commonly accepted meaning. Pursuant to the Instructions set forth herein, please consult with Plaintiff's counsel in the event that Defendant or their counsel has difficulty understanding the meaning of any term as it is used in these Requests.

X.  If any of the documents requested herein is withheld under a claim of privilege, you are instructed to provide a privilege log and to furnish a list identifying each such document, stating the date of each such document, each such document's author and addressee, each person to whom copies of each such document were furnished or to whom the contents thereof were communicated, a summary of the subject matter of each such document, whether such documents contain or relate to facts, opinions, or both, the nature of the privilege, each such document's present location, the identity of the person(s) or custodian(s) thereof, the basis upon which the asserted privilege is claimed for each such document, and the requests to which each such document is responsive.

## **DOCUMENTS REQUESTED**

1.  Any and all Communications and Documents exchanged between Defendant and Plaintiff relating to the underlying events, transactions and allegations referenced in the Complaint.

2.  Any and all Communications and Documents exchanged between Defendant and any non-party, including any Person and/or entity, relating to the underlying events, transactions and allegations referenced in the Complaint.

3.     Any and all Communications and Documents relating to the Contingent Stock Consideration as set forth in the Asset purchase Agreement, including any and all Communications and Documents used in the calculation of the Contingent Stock Consideration.

4.     Any all Communication and Document relating to the Holdback Cash amount, including any and all Communications and Documents related to deductions of the Holdback Cash amount and payment of the Holdback Cash amount to Plaintiff.

5.     Any and all Communications and Documents which may be offered by Defendant at trial or any other proceeding in or related to this matter.

6.     Any and all Communications and Documents evidencing the facts, matters, circumstances, arguments, or allegations of the underlying claims of the Complaint.

7.     Any and all Communications and Documents relating to any reports or opinions rendered by expert witnesses retained by Defendant to give an opinion in this matter.

8.     Any and all Communications and Documents exchanged and/or sent to  an expert witnesses retained by Defendant to give an opinion in this matter.

9.     All Defendant's insurance policies that will or may provide coverage in this action.

10.    Any and all Communications and Documents relating to written or oral contracts that Defendant may have entered into with Plaintiff.

11.    Any and all Communications and Documents that were sent from and to the email addresses of Ammu Warrier and Naveen Dua during their employment with Defendant.

12.    Any and all records of telephone conversations between any of the parties or third parties relating to matters involved in this action.

13.    Any and all notes, memos, and reports relating to matters involved in this action.

14.    Any and all Communications and Documents relating to the trial balance for Defendant and Coupa Contingent Work Force as of July 13, 2018, October 31, 2019, November 1, 2019, December 31, 2020, February 28, 2021, and May 1, 2021.

15. Any and all Communications and Documents relating to the trial balance for Defendant and Coupa Contingent Work Force for the years 2018, 2019, 2020 and 2021.

16. Any and all Communications and Documents, including drafts, relating to the financial statements and trial balances of Defendant and Coupa Contingent Work Force for July 13, 2018, October 31, 2019, November 1, 2019, December 31, 2020, February 28, 2021, and May 1, 2021.

17. Any and all Communications and Documents, including drafts, relating to the financial statements and trial balances of Defendant and Coupa Contingent for the years 2018, 2019, 2020 and 2021.

18. Any and all Communications and Documents relating to the Defendant's cash flow statements and supporting schedules for the financial statements for July 13, 2018, October 31, 2019, November 1, 2019, December 31, 2020, February 28, 2021 and May 1, 2021.

19. Any and all Communications and Documents relating to the Defendant's cash flow statements and supporting schedules for the financial statements for the years 2018, 2019, 2020 and 2021.

20. Any and all Communications and Documents relating to the Defendant's manual journal entries (i.e. general journal) for the periods ending on or about July 13, 2018, October 31, 2019, November 1, 2019, December 31, 2020, February 28, 2021, and May 1, 2021 including any journal entries prepared after the final trial balances.

21. Any and all Communications and Documents relating to the Defendant's manual journal entries (i.e. general journal) for the years 2018, 2019, 2020 and 2021, including any journal entries prepared after the final trial balances.

22. Any and all Communications and Documents relating to the Defendant's articles of incorporation and by-laws from July 13, 2018 to present, and any amendments during the same period.

23. Any and all Communications and Documents relating or submitted to and exchanged between Defendant and the Securities and Exchange Commission, Internal Revenue Service or any other regulatory or taxing authority from July 13, 2018 through present.

24. Any and all Communications and Documents relating to Defendant's any new agreements, including amendments (capital/operating equipment and leases, line of credit, etc.), effective during the years 2018, 2019, 2020 and 2021.

25. Any and all Communications and Documents relating to the Defendant's organizational chart as of July 13, 2018, October 31, 2019, November 1, 2019, December 31, 2020, February 28, 2021, and May 1, 2021.

26. Any and all Communications and Documents relating to the Defendant's organizational chart for the years 2018, 2019, 2020 and 2021.

27. Any and all Communications and Documents relating to the Defendant's listing of ownership percentages and/or stock as of July 13, 2018, October 31, 2019, November 1, 2019,  December 31, 2020, February 28, 2020, and May 1, 2021.

28. Any and all Communications and Documents relating to the Defendant's listing of ownership percentages and/or stock for the years 2018, 2019, 2020 and 2021.

29. Any and all Communications and Documents relating to the amount of Defendant's common stock and preferred stock authorized and outstanding as of July 13, 2018, October 31, 2019, November 1, 2019, , December 31, 2020, February 28, 2021, and May 1, 2021.

30. Any and all Communications and Documents relating to the amount of Defendant's common stock and preferred stock authorized and outstanding for the years 2018, 2019, 2020 and 2021.

31. Any and all Communications and Documents relating to the Defendant's personnel policy manual (employee handbook) as of July 13, 2018, October 31, 2019, November 1, 2019, December 31, 2020, February 28, 2020, and May 1, 2021.

32.     Any and all Communications and Documents relating to the Defendant's personnel policy manual (employee handbook) for the years 2018, 2019, 2020 and 2021.

33.     Any and all Communications and Documents relating to the Defendant's employee bonus or incentive plans, if any, as of July 13, 2018, October 31, 2019, November 1, 2019, December 31, 2020, February 28, 2020, and May 1, 2021.

34.     Any and all Communications and Documents relating to the Defendant's employee bonus or incentive plans, if any, for the years 2018, 2019, 2020 and 2021.

35.     Any and all Communications and Documents relating to the Defendant's deferred compensation agreements with officers or employees, if any, from July 13, 2018 to present.

36.     Any and all Communications and Documents relating to any non-compete agreement signed by the Defendant since July 13, 2018 until the present date, if any.

37.     Any and all Communications and Documents relating to dispute between Plaintiff and Defendant.

38.     Any and all Communications and Documents relating to negotiations between Defendant and Plaintiff for the Asset Purchase Agreement.

39.     Any and all Communications and Documents relating to the comparison of balance sheet accounts for the periods ending on July 13, 2018, December 31, 2018, October 31, 2019, November 1, 2019, December 31, 2019, December 31, 2020, February 28, 2021, and May 1, 2021.

40.     Any and all Communications and Documents relating to the comparison of balance sheet accounts for the years 2018, 2019, 2020 and 2021.

41.     Any and all Documents and Communications related to Defendant's guarantees and/or endorsements for the years 2018, 2019, 2020 and 2021.

42.     Any and all Documents and Communications related to Defendant's restricted assets for the years 2018, 2019, 2020 and 2021.

43.   Any and all Documents and Communications related to Defendant's Internal Revenue Service examinations for the years 2018, 2019, 2020 and 2021.

44.   Any and all Documents and Communications related to Defendant's entering into, or intentions to enter into debt agreement for the years 2018, 2019, 2020 and 2021.

45.   Any and all Communications and Documents relating to bank reconciliations for all Defendant's cash accounts for July 13, 2018, October 31, 2019, November 1, 2019, December 31, 2020, February 28, 2021, and May 1, 2021.

46.   Any and all Communications and Documents relating to bank reconciliations for all of Defendant's cash accounts for the years 2018, 2019, 2020 and 2021.

47.   Any and all Communications and Documents relating to bank statements for all Defendant's bank accounts for July 13, 2018, October 31, 2019, November 1, 2019, December 31, 2020, February 28, 2020, and May 1, 2021.

48.   Any and all Communications and Documents relating to bank statements for all of Defendant's bank accounts for the years 2018, 2019, 2020 and 2021.

49.   Any and all Communications and Documents relating to the Defendant's confirmation requests for all selected accounts for the audited financial statements for the periods between July 13, 2018 through the present date.

50.   Any and all Communications and Documents relating to the Defendant's accounts receivable aging report summary by customer as of July 13, 2018, October 31, 2019, November 1, 2019, December 31, 2020, February 28, 2021, and May 1, 2021.

51.   Any and all Communications and Documents relating to the Defendant's accounts receivable aging report summary by customer for the years 2018, 2019, 2020 and 2021.

52.   Any and all Communications and Documents relating to the Defendant's accounts receivable aging detail by invoice as of July 13, 2018, October 31, 2019, November 1, 2019, December 31, 2020, February 28, 2021, and May 1, 2021.

53. Any and all Communications and Documents relating to the Defendant's accounts receivable aging detail by invoice for the years 2018, 2019, 2020 and 2021.

54. Any and all Communications and Documents relating to the Defendant's reconciliation of the accounts receivable aging report to the trial balance, if any, as of July 13, 2018, October 31, 2019, November 1, 2019, , December 31, 2020, February 28, 2021, and May 1, 2021.

55. Any and all Communications and Documents relating to the Defendant's reconciliation of the accounts receivable aging report to the trial balance, if any, for the years 2018, 2019, 2020 and 2021.

56. Any and all Communications and Documents relating to the Defendant's schedule of other accounts receivable as of July 13, 2018, October 31, 2019, November 1, 2019, December 31, 2020, February 28, 2021, and May 1, 2021.

57. Any and all Communications and Documents regarding sales and prospective sales of Defendant relating to VMS.

58. Any and all Communications and Documents regarding sales and prospective sales of Defendant.

59. Any and all Communications and Documents relating to the Defendant's schedule of other accounts receivable for the years 2018, 2019, 2020 and 2021.

60. Any and all Communications and Documents relating to the Defendant's management analysis of the reasonableness of the allowance for doubtful accounts as of July 13, 2018, October 31, 2019, November 1, 2019, February 28, 2021, and May 1, 2021.

61. Any and all Communications and Documents relating to the Defendant's management analysis of the reasonableness of the allowance for doubtful accounts for the years 2018, 2019, 2020 and 2021.

62.    Any and all Communications and Documents relating to Defendant's credit memo summary for the periods ended on or about July 13, 2018, October 31, 2019, November 1, 2019, December 31, 2020, February 28, 2021, and May 1, 2021.

63.    Any and all Communications and Documents relating to Defendant's credit memo summary for the years 2018, 2019, 2020 and 2021.

64.    Any and all Communications and Documents relating to Defendant's analysis of the bad debt expense for the periods ending on or about July 13, 2018, October 31, 2019, November 1, 2019, December 31, 2020, February 28, 2021, and May 1, 2021.

65.    Any and all Communications and Documents relating to the Defendant's analysis of the bad debt expense for the years 2018, 2019, 2020 and 2021.

66.    Any and all Communications and Documents relating to the Defendant's agreements and supporting schedules for any related party receivables as of on or about July 13, 2018, October 31, 2019, November 1, 2019, December 31, 2020, February 28, 2021, and May 1, 2021.

67.    Any and all Communications and Documents relating to the Defendant's agreements and supporting schedules for any related party receivables for the years 2018, 2019, 2020 and 2021.

68.    Any and all Communications and Documents relating to the Defendant's contracts for Coupa Contingent Workforce or VMS Products pending, in process, and complete as of on or about July 13, 2018, October 31, 2019, November 1, 2019, , December 31, 2020, February 28, 2021, and May 1, 2021.

69.    Any and all Communications and Documents relating to the Defendant's list of contracts pending, in process, and complete for the years 2018, 2019, 2020 and 2021.

70. Any and all Communications and Documents relating to the Defendant's schedule of work in process as of July 13, 2018, October 31, 2019, November 1, 2019, December 31, 2020, February 28, 2021, and May 1, 2021.

71. Any and all Communications and Documents relating to the Defendant's schedule of work in process for the years 2018, 2019, 2020 and 2021.

72. Any and all Communications and Documents relating to the Defendant's reconciliation of the work in process schedules to the trial balance of July 13, 2018, October 31, 2019, November 1, 2019, December 31, 2020, February 28, 2021, and May 1, 2021, if any.

73. Any and all Communications and Documents relating to Defendant's reconciliation of the work in process schedules to the trial balance for the years 2018, 2019, 2020 and 2021.

74. Any and all Communications and Documents relating to Defendant's schedule of activity in all equity accounts for the periods ending on or about July 13, 2018, October 31, 2019, November 1, 2019, December 31, 2020, February 28, 2021, and May 1, 2021 reflecting (1) description, (2) beginning balance, (3) additions (including number of shares), (4) retirements (including number of shares), and (5) ending balance.

75. Any and all Communications and Documents relating to Defendant's schedule of activity in all equity accounts for the years 2018, 2019, 2020 and 2021 reflecting (1) description, (2) beginning balance, (3) additions (including number of shares), (4) retirements (including number of shares), and (5) ending balance.

76. Any and all Communications and Documents relating to Defendant's stock options supporting schedules as of July 13, 2018, October 31, 2019, November 1, 2019, December 31, 2020, February 28, 2021, and May 1, 2021.

77. Any and all Communications and Documents relating to Defendant's stock options supporting schedules for the years 2018, 2019, 2020 and 2021.

78.   Any and all Communications and Documents relating to the Defendant's equity options granted in 2018, 2019, 2020 and 2021.

79.   Any and all Communications and Documents relating to Defendant's Black-Scholes Model calculations as of 2018, 2019, 2020 and 2021.

80.   Any and all Communications and Documents relating to any new equity agreements in 2018, 2019, 2020 and 2021.

81.   Any and all Communications and Documents relating to any written description of the Defendant's revenue recognition policies for each product and service line.

82.   Any and all Communications and Documents relating to Defendant's comparison schedule of revenue by major revenue lines for the periods ending on or about July 13, 2018, October 31, 2019,  November 1, 2019, December 31, 2019, , December 31, 2020, February 28, 2021, and May 1, 2021.

83.   Any and all Communications and Documents relating to Defendant's comparison schedule of revenue by major revenue lines for the years 2018, 2019, 2020 and 2021.

84.   Any and all Communications and Documents relating to Defendant's "Revenue by Customer" detail for the periods ended on or about July 13, 2018, October 31, 2019, November 1, 2019, , December 31, 2020, February 28, 2021, and May 1, 2021, including documents and communications related to reconciliation between the revenue amounts, if any.

85.   Any and all Communications and Documents relating to Defendant's "Revenue by Customer" detail for the years 2018, 2019, 2020 and 2021, including documents and communications related to reconciliation between the revenue amounts, if any.

86.   Any and all Communications and Documents relating to Defendant's "Sales/Cost of Goods Sold (COGS) by Month" detail for the period from July 13, 2018 through the present date.

87.  Any and all Communications and Documents relating to the schedule of all legal fees that were paid during the periods ending on December 31, 2018, December 31, 2019, December 31, 2020, and January 1, 2020 through May 1, 2021, including the name of the attorney, a description of the payment, and the amount.

88.  Any and all Communications and Documents relating to the Defendant's sales listing by customer invoice for the five (5) days before and five (5) days after July 13, 2018, October 31, 2019, November 1, 2019, December 31, 2020, February 28, 2021, and May 1, 2021.

89.  Any and all Communications and Documents relating to Defendant's schedule of customer (Accounts Receivable and Revenue) and vendor (Accounts Payable and Purchases) concentrations for the period of July 13, 2018 through October 31, 2019, November 1, 2019 through February 28, 2020, March 1, 2020 through December 31, 2020, and January 1, 2021 through May 1, 2021.

90.  Any and all Communications and Documents relating to the schedule supporting Defendant's bad debt expense balance at December 31, 2018, December 31, 2019, and December 31, 2020.

91.  Any and all Communications and Documents relating to all Defendant's revenues, fees, royalties or other amounts received for the periods of July 13, 2018 through October 31, 2019, between November 1, 2019 through February 28, 2020, and March 1, 2020 through May 1, 2021.

92.  Any and all Communications and Documents relating to any transaction of  Defendant with any related party and any financial transactions that occurred with such parties during the year ended on December 31, 2018, December 31, 2019, and December 31, 2020 and thereafter, including but not limited to loan agreements and sales agreements.

93.   Any and all Communications and Documents relating to any amounts owed to and amounts owed by the Defendant and any related parties from July 13, 2018 through the present date, if any.

94.   Any and all documents related to completed related party questionnaires for all of Defendant's executive board members for audits performed for the years ended December 31, 2018, December 31, 2019, and December 31, 2020, if any.

95.   Any and all Communications and Documents relating to Defendant's calculation of ARR for the First Eligibility Payment for the period of July 13, 2018 through October 31, 2019.

96.   Any and all Communications and Documents relating to the Defendant's calculation of ARR for the Second Eligibility Period for the period of November 1, 2019 through February 28, 2020.

97.   Any and all Communications and Documents relating to Defendant's insurance for the acquisition of the Purchased Assets.

98.   Any and all Communications and Documents relating to all information included in Defendant's customer relationship management (CRM) from January 1, 2018 to present, including all customer communications by any form, including email, chatter box and texts.

99.   Any and all Communications and Documents from and to Defendant relating to the invoices, contracts, sales, collections, cancellations or revisions from customer relationship management (CRM) and any other source from July 13, 2018 to present.

100.   Any and all Communications and Documents relating to all contracts, revised contracts, cancelled contracts, or any other revision or additional contracts and terms signed by the Defendant for the period of July 13, 2018 to present.

101.   Any and all Communications and Documents relating to pricing discussions and negotiation documentation between the Defendant and previous, existing and potential customers.

102. Any and all Communications and Documents relating to the Defendant's revenues, fees, royalties or other amounts received for the periods of July 13, 2018 through October 31, 2019, between November 1, 2019 through February 28, 2021, and March 1, 2021 through present.

103. Any and all Communications and Documents relating to all of Defendant's books, records, documents, computer stored data, diskettes, files, and papers whether in hard copy or computer or electronic format relating to or used in the calculation for the Eligibility Periods of July 13, 2018 through October 31, 2019, November 1, 2019 through February 28, 2021, and March 1, 2021 through present.

104. Any and all Communications and Documents relating to the Defendant's changes and assumptions in liabilities for the periods of July 13, 2018 through October 31, 2019, November 1, 2019 through February 28, 2020, and subsequent to present.

105. Any and all Communications and Documents relating to calculation of any consideration that was paid in cash or stock to Plaintiff.

106. Any and all Communications and Documents relating to calculation of any consideration that was not paid in cash or stock to Plaintiff.

107. Any and all Communications and Documents relating to all of the Defendant's transactions with shareholders of Defendant for the periods of July 13, 2017 to present.

108. Any and all Communications and Documents relating to any assignments of contracts by the Defendant for the period of July 13, 2018 through present.

109. Any and all Communications and Documents relating to any potential sales, acquisitions, or sale transactions by Defendant with any Person other than Plaintiff from July 13, 2018 to present.

110. Any and all Communications and Documents relating to Defendant's change or increase in compensation payable to officers, directors, employees, or consultants, or establishment of

any bonus, pension, severance, retention, insurance or other benefit payment, including stock awards, stock option grants, or stock appreciation rights, if any, for the periods from July 13, 2018 through October 31, 2019, November 1, 2019 through February 28, 2020 and March 1, 2020 to present.

111.   Any and all Communications and Documents relating to the Defendant's incurrence, creation, or assumption of any encumbrance on any of Plaintiff's assets or properties, or payment or discharge of any liabilities for the periods from July 13, 2018 through October 31, 2019, November 1, 2019 through February 28, 2020 and March 1, 2020 to present.

112.   Any and all Communications and Documents relating to any amendment or change in the certificate of incorporation or bylaws of the Defendant for the period from July 13, 2018 through May 1, 2021.

113.   Any and all Communications and Documents relating to any change with respect to the Defendant's management, supervisory or other key personnel, any termination of employment of a material number of employees, consultants, or any labor dispute claim or claim of unfair labor practices for the period from July 13, 2018 through the present date.

114.   Any and all Communications and Documents relating to any liability incurred by Defendant to any of its officers, directors or shareholders, except for normal and customary and expense allowances payable to officers in the ordinary course of business for the period from July 13, 2018 through the present date.

115.   Any and all Communications and Documents relating to any Defendant's making of a loan, advance or capital contribution to and by Defendant, or any investment in any of its officers, directors, employees, consultants, contractors or shareholders, or any firm or business enterprise in which the Defendant had a direct or indirect material interest at the time of such loan, advance or capital contribution from July 13, 2018 through the present date.

116. Any and all Communications and Documents relating to any material change in the manner in which Defendant extends discounts, credits or warranties to customers or otherwise deals with its customers from July 13, 2018 through the present date.

117. Any and all Communications and Documents relating to any Defendant's deferral of payment of revenue and expense for the periods from July 13, 2018 through October 31, 2019, November 1, 2019 through February 28, 2020 and March 1, 2020 to present.

118. Any and all Communications and Documents relating to any change in Defendant's accounting methods or practices, (including any change in depreciation or amortization policies or rates or revenue recognition policies) or any revaluation of any assets. (except as required by U.S. GAAP) from July 13, 2018 through the present date.

119. Any and all Communications and Documents relating to the Defendant's announcement or any negotiation or any entry into any contract relating to VMS.

120. Any and all Communications and Documents relating to any contract entered by the Defendant with any dealer, distributor, OEM, VAR (value added reseller), sales representative, Person, or similar contract under which any third party is authorized to sell, sublicense, lease, distribute, market or take ordered for any of its products, services, or technology of Defendant for the periods from July 13, 2018 through May 1, 2021.

121. Any and all Communications and Documents relating to any joint venture, partnership, or co-marketing or similar contract signed by Defendant, that has involved, or is reasonably expected to involve, a sharing of revenues, profits, cash flows, expenses or losses with any Person or a payment of royalties to any Person for the period from July 13, 2018 to May 1, 2021.

122. Any and all Communications and Documents relating to any contract that restricts the Defendant from engaging in any aspect of its business (ii) participating or competing in any line of business or market, (iii) freely setting prices for its products, services or technologies

(including most favored customer pricing provisions), (iv) engaging in any business in any market or geographic area or that grants any exclusive rights, rights or refusal, rights of first negotiation or similar rights to any party (v) soliciting potential employees, consultants, contractors or other suppliers or customers for the period from July 13, 2018 through May 1, 2021.

123. Any and all Communications and Documents relating to any changes in any Outbound Seller IP Rights Agreement entered by the Defendant, for the period from July 13, 2018 to May 1, 2021.

124. Any and all Communications and Documents relating to any changes in any Inbound Seller IP Rights Agreement entered by the Defendant, for the period from July 13, 2018 to May 1, 2021.

125. Any and all Communications and Documents relating to any changes in any contract signed by the Defendant, providing support and maintenance for the period from July 13, 2018 through May 1, 2021.

126. Any and all Communications and Documents relating to any contract signed by the Defendant with any labor union, works council, or similar labor organization for the period from July 13, 2018 to May 1, 2021.

127. Any and all Communications and Documents relating to any other contract entered into or terminated by the Defendant during the period from July 13, 2018 to May 1, 2021 that is material to generating revenue or other operations of the Defendant's business.

128. Any and all Communications and Documents relating to any disputes concerning the Defendant's products or services with any customer or distributor for the period from July 13, 2018 through May 31, 2021.

129. Any and all Communications and Documents relating to any changes, revisions of terms, additions of new contracts, cancellations of contracts, and pricing terms including service

agreements, for the Master Service Contracts assumed by the Defendant on or about July 13, 2018, including customers, for the periods from July 13, 2018 through October 31, 2019, November 1, 2019 through February 28, 2020, and March 1, 2020 through May 1, 2021. Include all correspondence, invoices, CRM data and communications including chatter box, billing and collections.

130. Any and all Communications and Documents relating to the contracts listed on the Schedule 3.12 of the Asset Purchase Agreement.

131. Any and all Communications and Documents relating to any calculation of ARR as defined per Asset Purchase Agreement, for the periods for July 13, 2018 to October 31, 2019, and November 1, 2019 through February 28, 2020.

132. Any and all Communications and Documents relating to any calculation with detailed supporting documentation of the Defendant's stock closing price at the end of each month for the period from July 1, 2018 through February 28, 2021.

133. Any and all Communications and Documents relating to the Defendant's records and support for the calculation of ARR, including amount of bad debt, uncollectible amounts, write-off's and other similar amounts for the period from July 13, 2018 through October 31, 2019, and November 1, 2019 through February 28, 2021. Include specific schedules and supporting documentation for the periods above (the First Eligibility period and Second Eligibility Period).

134. Any and all Communications and Documents relating to the Defendant's records and support including invoices, electronic CRM data, collections, billings, and all supporting documentation for the items below:

    a. recurring subscription-base revenue for the VMS products

    b. revenue generated by customer usage of VMS products

    c. revenue for professional service generated by deployment of VMS products

    d.  revenue for fees received under the License agreement

    e.  Calculation and documentation supporting sales of VMS products that were bundled with other product(s) of Defendant, the revenue that related to the VMS products allocated by Defendant based on the list of bundled products as per any contract (as adjusted for any discount off list price given in connection with any sale).

135.    Any and all Communications and Documents relating to any disclosure and of any negotiated or hostile transaction which involved any merger or consolidation of Defendant with or into another corporation, entity, or person where holders of voting capital stock of Defendant (on an outstanding as-converted-to common-stock basis) immediately prior to such transaction do not hold in the aggregate greater that 50% of the outstanding post-transaction voting capital stock (on an outstanding as-converted-to common-stock basis) of the combined entity; or any change in the ownership of more than 50% of the voting capital stock of the Defendant; or the sale of all assets of the Defendant for the period form July 13, 2018 through February 28, 2021.

136.    Any and all Communications and Documents relating to the Defendant's equity incentive program and issuance of restricted stock units to key employees of the Plaintiff including vesting awards for the period from July 13, 2018 to February 28, 2021.

137.    Any and all Communications and Documents relating to any changes in pricing agreements by the Defendant with any customer or potential customers in pricing model, including changes in percentage of spend, flat upfront fee with a fee for implementation, annual recurring license model, for the periods from July 13, 2018 through October 31, 2019, November 1, 2019 through February 28, 2020, and March 1, 2020 to present.

138.    Any and all Communications and Documents relating to any changes in revenue and make up of the composition of billing details with all customers or potential customers of the Defendant, for the period from July 13, 2018 through February 28, 2021.

139. Any and all Communications and Documents relating to any deals inflight as of July 13, 2018 that were brought in by Plaintiff and were not closed by Defendant.

140. Any and all Communications and Documents relating to any bundling of products by Defendant, from the period July 13, 2018 through February 28, 2021.

141. Any and all Communications and Documents relating to how revenue of Defendant was recognized for all Defendant's products and services under ASC 606.

142. Any and all Communications and Documents relating to any discount of price given by the Defendant for Workspend and/or DCR MSP for the period July 13, 2018 through February 28, 2021.

143. Any and all Communications and Documents relating to any interaction with Ammu Warrier and Naveen Dua from July 13, 2018 to present, including detailed information, records, communications both written and electronic, regarding termination of employment of Ammu Warrier and Naveen Dua.

144. Any and all Communications and Documents relating to any employment changes, additions and termination of any employees or contractors of Defendant for the period July 13, 2018 through May 1, 2021.

KELLEY KRONENBERG, P.A.
*Attorneys for Plaintiff*
10360 West State Road 84
Ft. Lauderdale, FL 33324
Telephone: (954) 370.9970
Facsimile: (954) 382.1988
Emails: harora@kklaw.com
         eadler@kklaw.com
By: /s/ Harsh Arora
    Harsh Arora, Esq.
    Florida Bar No.: 35271
By: /s/ Efraim Adler
    Efraim N. Adler, Esq.
    Florida Bar No.: 1008261